RECORD NO. 15-1244

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

VENUS YVETTE SPRINGS,

*Plaintiff-Appellant,*

v.

ALLY FINANCIAL INCORPORATED,
f/k/a GMAC Incorporated; AMY BOUQUE,

*Defendants-Appellees,*

and

KATHLEEN PATTERSON; YEQUIANG HE, a/k/a Bill He;
CYNTHIA DAUTRICH**,**

*Defendants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

## OPENING BRIEF OF APPELLANT
## VENUS YVETTE SPRINGS

Herman Kaufman, Esq.
HERMAN KAUFMAN, ESQ.
Box 352
Old Greenwich, CT 06870
(203) 964-1115
*hkaufma2@gmail.com*

Venus Yvette Springs
SPRINGS LAW FIRM PLLC
7437 Willesden Lane
Charlotte, NC 28277
(704) 241-9995
*springslawfirm@gmail.com*

Clifton L. Brinson
Kirk Gibson Warner
SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL &
JERNIGAN, LLP
P. O. Box 2611
Raleigh, NC 27602
(919) 821-6605
*cbrinson@smithlaw.com*
*kwarner@smithlaw.com*

*Counsel for Appellant*

*Pro Se Appellant*

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1244__    Caption: __Venus Springs v. Ally Financial Incorporated__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Venus Springs__
(name of party/amicus)

_____

 who is _____the appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?   ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐ YES ☑ NO
If yes, identify entity and nature of interest:


5.      Is party a trade association? (amici curiae do not complete this question)      ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.      Does this case arise out of a bankruptcy proceeding?      ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:


Signature: /s/ Venus Springs                              Date:      March 11, 2015

Counsel for: _____


## CERTIFICATE OF SERVICE
**************************

I certify that on ___ March 11, 2015 ___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:


/s/ Venus Springs                                              March 11, 2015
        (signature)                                                    (date)

# <u>Table of Contents</u>

CORPORATE DISCLOSURE

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES ............................................................ iii

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES ................................................................2

STATEMENT OF THE CASE............................................................5

STATEMENT OF FACTS .................................................................6

SUMMARY OF THE ARGUMENT ..................................................11

ARGUMENT ..................................................................................15

    I.   Standard of Review .............................................................15

    II.  The Defendants Motion Should Be Dismissed For Lack of Jurisdiction. ..16

       A.  As There was no Case or Controversy Remaining in this Case, the District Court Lacked Subject Matter Jurisdiction To Decide the Defendant's Motion ...................................................................16

       B.  Appellee's sole procedural remedy within the context of this case for contesting the uploading of the video taped deposition of Ally Financial was to apply to this Court for the recall of the mandate........................................20

       C.  The District Judge Should Have Performed a De Novo Review of the Magistrate's Order. .........................................................21

       D.  A Motion For a Rule 26 Protective Order Must be Brought in the Court Where the Action Is Pending; Thus Defendants' Motion Was Untimely......24

       E.  The relief demanded by the Defendants Ally and Bouque in their motion for a protective order was rendered moot by Public Dissemination. .............26

    III. The Court's Order Constitutes an Prior Restraint Prohibited By the First Amendment..........................................................................28

    IV. Good Cause to Issue a Protective Order Did Not Exist And There is No Compelling Government Interest. ...................................................31

V.  The Protective Order Goes Beyond the Motion, Reaches Materials Publicly Filed With the Court, and Imposes an Unconstitutional Prior Restraint...........33

CONCLUSION .....................................................................................................37

REQUEST FOR ORAL ARGUMENT ...................................................................38

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................39

CERTIFICATE OF SERVICE ..............................................................................40

# TABLE OF AUTHORITIES

## Cases

*ALCOA v. EPA*, 663 F.2d 499, 502 (4th Cir. 1981) .................................................24

*Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 218 F.3d 307, 310 (4th Cir. 2000) ............................................................... 17, 19

*Bridge C.A.T. Scan Associates v. Technicare Corp*., 710 F.2d 940 .................. 2, 31

*Brittain v. Stroh Brewery Co*., 136 F.R.D. 408, 413 (M.D.N.C. 1991)...................25

*Bruton v. Carnival Corp*., 916 F.Supp.2d 1262 (S.D. FL. 2012) ...........................19

*Chambers v. NASCO, Inc*., 501 U.S. 32 (1991).......................................................18

*Charter Practices Int'l. v. Robb*, 2015 U.S. Dist. LEXIS 34112 (D. Conn. 2015).31

*Co. Doe v. Pub. Citizen* 749 F.3d 246 (4th Cir 2014) ................................ 21, 28, 35

*Cobra Natural Res., LLC v. Fed.Mine Safety & Health Review Comm'n,* 742 F.3d 82, 86 (4th Cir. 2014)..................................................................................................2

*Cohen v. Beneficial Indus. Loan Corp*., 337 U.S. 541, 546 (1949)..........................2

*Connick v. Myers*, 461 U. S. 138, 145 (1983)..........................................................28

*Cooter & Gell*, 496 U.S. 384 (1990)................................................................. 14, 20

*DeFunis v. Odegaard* 8212 235, 416 U.S. 312, 317-20 (1974) ..............................26

*Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir.2012) .................................. 26, 27

*Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir.2008) ...........................................26

*Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950 (1968) ...............................16

*Foster v. Carson*, 347 F.3d 742, 746 (9th Cir.2003) .............................................27

*Gelboim v. Bank of America Corp*. 135 S. Ct. 897, n.5, (2015)................................1

*Greater Boston Television Network v. Federal Communications Commission*, 463 F.2d 288 (D.C. Cir. 1971), cert. denied, 406 U.S. 950 (1972) ............................21

*In re Charlotte Observer*, 921 F.2d 47 (4th Cir. 1990) ..........................................36

*Indiana Lumbermens Mut. Ins. Co. v. Information Systems, Inc*., 83 F.3d 415 (4th Cir. 1996) ...............................................................................................................19

*J.W. v. Knight*, 452 F. App'x 411 (4th Cir. 2011)...................................................26

*Kokkonen v. Guardian Life Insurance Company of America*, 114 S. Ct. 1673, 511 U.S. 375 (1994)................................................................................................ 17, 19

*Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005).................................................16

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) .................................2

*Moran v. Clarke*, 309 F.3d 516 (8th Cir. 2002)......................................................21

*NAACP v. Button*, 371 U.S. 415 (1963)...............................................................15

*Near v. State of Minnesota*, 283 U.S. 697 (1931)...............................................36

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976).......................................36

*New York Times Co. v. United States*, 403 U.S. 713 (1971) .............................36

*Nome Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 815 (9th Cir.1995) .........................26

*Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971)................................36

*Organization for a better Austin v. Keefe,* 402 U.S. 415, 419 (1971) ....................28

*Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419 (1971)....................28

*Press-Enterprise Co. v. Superior Court*, 478 U.S.1, 15 (1986).............................35

*Protectmarriage.com-Yes On 8, Renewal v. City of Montgomery*, 752 F.3d 827,
    834 .................................................................................................. 26, 27

*Rafferty, In re*, 864 F.2d 151, 154 (D.C. Cir. 1988) ........................................ 23, 35

*Reddick v. White*, 456 F. App'x 191, 193 (4th Cir. 2011) (per curiam)...................23

*Reserve Mining Co. v. Lord*, 529 F.2d 181, 184 (8th Cir. 1976)............................21

*Ross v. Reed*, 719 F.2d 689, 693-94 (4th Cir. 1983)............................................26

*Rushford v. The New Yorker Magazine, Inc*., 846 F.2d 249, 253 (4th Cir.1988)...33,
    34

*San Diego v. Roe*, 543 U. S. 77, 83-84 (2004).....................................................30

*San Juan Dupont Plaza Hotel Fire Litigation, In re*, 859 F.2d 1007 (1st Cir 1988)
    .................................................................................................................23

*Seattle Times Co. v. Rheinhart*, 467 U.S. 20 (1984)................................. 14, 20, 31

*Seattle Times*, 467 U.S. at 32 (citations omitted). ...............................................34

*Sebelius v. Auburn Reg'l Med. Ctr*., 133 S. Ct. 817, 824,  184 L. Ed. 2d 627, 81
    USLW 4053 (2013)...................................................................................17

*Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir.2001).......27

*Simon v. Eastern Kentucky Welfare Rights Organization*, 96 S.Ct. 1917, 426 U.S.
    26, 37 (1976).............................................................................................16

*Smith v. Daily Mail Publishing Co.,* 443 U.S. 97 (1979) .......................................28

*Snyder v. Phelps*, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011) ..............................30

*Stone v. University of Maryland Medical System Corp*., 855 F.2d 178 (4th Cir.
    1988) .........................................................................................................35

*Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)......................................2

*Trans Energy, Inc. v. EQT Prod. Co*., 743 F.3d 895, 900 (4th Cir. 2014) ..............16

*Under Seal v. Under Seal,* 326 F.3d 479, 483 (4th Cir. 2003) ..............................28

*United States v. Appelbaum,* 707 F.3d 283, 293 (4th Cir. 2013)............................28

*United States v. Brown*, 218 F.3d 415 (5th Cir. 2000) ..............................................2

*United States v. Hudson*, 7 Cranch 32, 34 (1812) .................................................19

*Virginia Dept. of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004) ..............................................................................................................35

**Statutes**

28 U.S.C 636 (b) (1) (A) and (B)............................................................................22

28 U.S.C. §1291 .....................................................................................................1

28 U.S.C. §1294(1) ................................................................................................1

28 U.S.C. 636(b)(1)(A) ...............................................................................21, 23, 24

28 USC 636 (b) (1).................................................................................................23

U.S. Const. Art. III ...............................................................................................17

**Rules**

F.R.C.P., Rule 30(b)(6)...........................................................................................16

Federal Rule of Civil Procedure 11 ..................................................................14, 20

Federal Rule of Civil Procedure 26 ..................................................................22, 25

## JURISDICTIONAL STATEMENT

The  underlying action for this  case was closed on January 30, 2012, a notice of appeal was filed on February 24, 2012 and this Court issued its mandate on October 4, 2012.  (JA 11-12)  The matter under appeal for this case number began with a motion for a protective order filed September 24, 2014.  (JA 28). That protective order was granted by the magistrate judge on December 2, 2014. (JA 61) Plaintiff timely objected and the district court affirmed the magistrate judge's order on February 6, 2015.  JA 87.  Plaintiff-Appellant, Venus Springs ("Springs") timely filed a Notice of Appeal on March 8, 2015.  JA 107.  The overruling of Plaintiff's objections was a final decision that disposed of the newly created claim which was the only claim in this case and thus conferred jurisdiction on this Court under 28 U.S.C. §1291 and 28 U.S.C. §1294(1).  *See Gelboim v. Bank of America Corp*. 135 S. Ct. 897, n.5, (2015).

Alternatively, when the motion for the protective order was initiated, the litigation in the principal case had terminated, and there was nothing pending in the District Court.   Moreover, the Defendants had not served a summons and complaint.  Under these circumstances, if the order below did not meet the requirements for appealability from a final judgment, it nonetheless, the order is appealable under the collateral order exception to finality.  *See United States v. Brown*, 218 F.3d 415 (5th Cir. 2000); *In re Rafferty*, 864 F.2d 151 (D.C. Cir.

1

1988).   The collateral order doctrine extends the court's jurisdiction to a "'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed final.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). This small class "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995); *see also Cobra Natural Res., LLC v. Fed.Mine Safety & Health Review Comm'n,* 742 F.3d 82, 86 (4th Cir. 2014).   If not appealable under this exception to finality, the Court should treat the notice of appeal as a request for mandamus.  *See Bridge C.A.T. Scan Associates v. Technicare Corp.*, 710 F.2d 940 (2nd. Cir. 1983).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STATEMENT OF ISSUES

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I.    Whether after the termination of the litigation in the principal case, including the issuance of the mandate by the Court of Appeals, jurisdiction in the District Court was established merely by the Defendants-Appellees filing a motion for a protective order, without serving a summons and compliant. The Court below answered this question, Yes.

2

II.   Whether Defendants-Appellees's procedural remedy, if any for contesting the uploading of the videotaped deposition of Ms. Bouque was to apply to the Court of Appeals for the recall of that Court's mandate or institute a new action and file for an injunction under Federal Rule of Civil Procedure 56. The Court below did not answer this question,.

III.  Whether, after the termination of the litigation in the principal case, a case or controversy under Article III of the Constitution was presented to the District Court, merely by the Defendants-Appellees filing a motion for a protective order.

The Court below answered this question, Yes.

IV.   Whether the proceeding in the District Court, generated by Defendants' motion for a protective order, constituted a "discovery proceeding.

The Court below answered this question, Yes.

V.    Whether the decision in *Seattle Times Co., v. Rheinhart, 467 U.S. 20 (1984)*, holding that a protective order in advance of the production of discovery materials, prior to trial, is dispositive of Plaintiff's post-judgment disclosure of discovery materials, after the termination of the litigation in the principal case.

The Court below answered this question, Yes.

3

VI.    Whether the order rendered by the Court below mandating that Appellant remove the videotaped deposition constituted a prior restraint, forbidden by the First Amendment of the Constitution**.**

The Court below answered this question, No.

VII.    Whether, because the videotaped deposition had been placed in the public domain and was thus available to third parties, the relief demanded by the Defendants-Appellees in its motion for a protective order was rendered moot.

The Court below did not answer this question.

IX.    Whether the presumption favoring public disclosure, in this case, the uploading of the videotaped deposition, was overcome by some countervailing interest.

The Court below did not answer this question.

## STATEMENT OF THE CASE

Plaintiff appeals from a district court order dated February 6, 2015 (JA 87) overruling her objections to a protective order entered by the magistrate judge on December 2, 2014 (JA 61).

On January 30, 2012, the underlying district court case was closed.  (JA 11). Neither party consented to magistrate judge jurisdiction under 28 U.S.C 636 (c). On January 30, 2012, the district court dismissed Plaintiff's claims by summary judgment and judgment was entered in favor of the defendants.   (JA 11).  The Plaintiff appealed and the judgment was affirmed.  *Id*.  The Fourth Circuit Court of Appeals issued its mandate on October 4, 2012.  (JA 12).  The case was not reopened. (JA 1-16). The mandate was not recalled.  (Id.)  On September 24, 2014, Defendants Ally and Bouque filed a motion for either a new protective order or a modification of a previous protective order to require Plaintiff to remove excerpts of a 30(b)(6) deposition with Amy Bouque as the corporate representative from her YouTube channel, the Pro Se Advocate. (JA 28).  On December 2, 2012, the magistrate judge granted the Defendants' motion and modified the prior protective order, for which there was no ongoing jurisdiction, to require Plaintiff to remove all audio and video from the 30(b)(6) video deposition from her YouTube site.  (JA 61).  The prior protective order was entered on September 15, 2011 and prevented Plaintiff from deposing the Defendant Ally in  Charlotte, North Carolina, requiring

said 30(b)(6) deposition to occur in Michigan or by telephone or videoconference. (JA 27). Plaintiff timely filed objections to the magistrate judge's order on December 17, 2014. (JA 74). The district court, conducting a review on the clearly erroneous standard under 28 U.S.C. 636(b)(1)(a), overruled Plaintiff's objections. (JA 14, 87).

## STATEMENT OF FACTS

Since the protective order that is under appeal in this case was a modification of a previous order, the previous protective order will be briefly described. On or about August 4, 2011, during the underlying litigation in this case, Plaintiff attempted to notice the corporate deposition of the Defendant Ally in Charlotte, North Carolina where the action was filed. The Defendant Ally filed a motion for a protective order. Despite the magistrate judge recognizing that Charlotte was one of several key locations for Defendant Ally and that many top executives worked in Charlotte (including the Chief Executive Officer), he granted a protective order preventing Plaintiff from conducting the 30(b)(6) deposition in Charlotte. (JA 25) The order specifically required the deposition be held in Michigan or by telephone or videoconference. He also limited the allowable document requests that could accompany the notice of deposition. (JA 25). Thus Plaintiff videotaped the deposition and conducted it by telephone. Id. It was at

that time that Defendants could have sought ongoing protection of content from

disclosure but did not.  Two years after the close of this case, in January of 2014,

Plaintiff started a website to provide educational information to pro se litigants.

(JA 52).  Plaintiff also started a petition to make Ally responsible for the harm it

had caused on the tax payers and citizens.   (JA 50).  On January 19, 2014, Plaintiff

uploaded an excerpt of the 30(b)(6) deposition of Ally Financial.  (JA 50).  That

video was part of the petition and people who viewed the petition would see the

video embedded into the petition. The corporate representative in the video was

Amy Bouque.  There was no confidential information revealed in that video.  The

transcript of the video was filed in connection with Plaintiff's response to the

motion for summary judgment.  Plaintiff also had individual deposition videos

however she did not upload those videos.  (JA 82).  Those videos themselves were

filed along with the transcripts in connection with the Plaintiff's supplemental

response in opposition to the motion for summary judgment.  (JA 82, 100)

Plaintiff had not received the 30(b)(6) deposition video yet at the time she made

her supplemental response. (JA 82).  Shortly after January, Plaintiff uploaded

another excerpt from that same video deposition, with an introductory part

explaining how to successfully depose a deponent over the telephone and use the

facial expressions and hand gestures from the video to tell if a deponent is lying.

(JA, Vol II, Video) The signs were based on published psychological literature.

The title of the video was the "Amy Bouque Deposition: Best Ways to Tell if a

Witness is Lying."  Later in April, Plaintiff posted an abbreviated version of the

first video with similar written commentary about Ally Bank and not believing the

propaganda in its commercials about it being different from other banks.  The

video excerpt is directly related to the commentary.   The written commentary

under the video entitled Amy Bouque, the Best Ways to Tell if a Witness is Lying

was as follows,  "Sign the Petition Against Ally Bank formerly GMAC".

> Here I have attached pictures of Ally Executive Amy Bouque
> (designated by Ally Bank as the expert corporate 30(b)(6) witness) in
> order to help self represented parties who have to go through
> discovery the first time and conduct and appear at depositions. I
> comment on the signs of deceit as explained by psychology websites
> in a slightly humorous and exaggerated way. It is not an exact science.
> This was one of the first depositions I ever conducted and it was a
> telephone deposition. I was no expert but I want others to learn and
> become even better just as I did. Here Ally says it doesn't think
> written policies are a good idea and HR prefers to use subjective
> instead of objective measures. Sign the Petition against Ally Bank
> formerly GMAC at http://chn.ge/1oz4qN0. 457 F.2d 1377 (4th Cir.,
> 1972); 704 F.2d 613 (11th Cir); 457 F.2d 348, 359 (5th Cir.1972);720
> F.2d 326, 336-7 (4th Cir. 1983)."

(JA 50, 59).

Another video commentary read, "Ally Financial has received billions of

dollars of tay payer funds and the U.S. Treasury Dept is the majority owner.  (JA

50)  Yet it pays its elitist consultants hundreds of millions. . . . A third video

commentary read "So Ally f/k/a GMAC forecloses on American homes illegally

and resurfaces as Ally Bank.  Ally Bank puts forth propaganda in commercials

8

about being different convincing you to deposit your hard earned money with the same company that took from the poor and then filed bankruptcy when they made $1 billion. . . . What will happen if Ally Bank crashes and fails and you can't get your money but the bank accounts of the consultants are even fatter?" (JA 58) Nothing Plaintiff wrote or said was false or defamatory.   It did contain Plaintiff's opinion.  Defendants never filed a defamation suit which would have been their remedy if the Defendants had been defamed.

On April 16, 2014, counsel for Ally and Amy Bouque emailed YouTube and requested the videos be removed based on a violation of YouTube's privacy guidelines.  (JA 36). YouTube declined to remove the videos stating its privacy guidelines were not violated by the videos.  (*Id*).  Subsequent removal requests were made to YouTube in May and declined.  (JA40-44).  Three months after contacting YouTube, Defendants, through counsel allegedly mailed a letter to Plaintiff dated July 2, 2014 stating that it would take legal action if the videos were not removed by July14, 2014. (JA 54).  Another three months later, on September 24, 2014, over three years after discovery closed and over two and a half years after this case closed, Defendants filed a motion for a protective order under rule 26 of the Federal Rules of Civil Procedure.  (JA 28).  Defendants moved the court to order Plaintiff to remove the posted excerpts of the 30(b)(6) deposition and to enjoin Plaintiff from further posting of that video.  (*Id*.)  The videos were in the

9

public domain eight months, downloaded and viewed many times before Defendants brought their motion. On December 2, 2014, Magistrate Judge Keesler entered an order granting Defendants' motion for protective order. (JA 61). In that order, the magistrate judge amended the September 2011 protective order, for which no continuing jurisdiction remained, to provide that "No party shall publish or disseminate audio or video recordings obtained during discovery in this action without prior permission of the court." Id.

The order further mandated that:

> [1] Plaintiff shall immediately have any video or audio recordings related to this action removed from YouTube and any other internet site. Such video(s) or audio recording(s) may only be used in connection with this lawsuit, unless otherwise ordered by this Court; [and]

> [2] Plaintiff shall file a Notice with this Court, on or before December 16, 2014,describing the steps she has taken to remove video(s) and/or audio recording(s) from public access, and confirming that the 30(b)(6) deposition by Amy Bouque has been removed from YouTube. (JA 71-2)

The magistrate's order also stated that failure to obey the order would likely lead to sanctions. (Id. at 72). Plaintiff treated the order as a recommendation and did not remove the video and audio in response to the magistrate's order. (JA 93) Plaintiff objected, through her attorneys, to the magistrate's judge jurisdiction to make an order on a dispositive matter, to the court's jurisdiction under Article III in a closed case, to the movant's use of rule 26 instead of 56 and to the prior restraint on her First Amendment Rights. (JA 74). The United States District Court Judge

10

overruled the objections on February 6, 2015 [JA 87] holding that the magistrate

judge had authority to decide the motion because it was pretrial and nondispositive.

The district court did not conduct a de novo review.   (JA 93-94).  Plaintiff

appealed on March 8, 2015. (JA 105).

## SUMMARY OF THE ARGUMENT

The following facts are indisputable:

1.  Prior to and following the deposition of  Defendant Ally Financial Inc,

Defendants sought no order and the district court entered no order regarding the

use of the deposition or regarding disclosure of its contents.

2.  Plaintiff would not have the video depositions but for Defendant Ally's prior

protective order requiring the 30(b)(6) depositions occur in Michigan.

3.  This case had been closed two years and discovery had been closed three

years before Defendants filed their motion for a protective order.  The underlying

case and controversy had ended with this case in 2012 and Defendants did not

move to reopen the case or recall the mandate.

4.  Without objection or limitation, the transcript of the deposition of Amy

Bouque was filed in its entirety and is publicly available to this day.

5.   Without objection or limitation, the transcript and the videos of the other video depositions in this case were filed in their entirety and are publicly available to this day.

6.   Defendants have not made any argument, nor could they, that the deposition of Amy Bouque, as witness for Ally Financial, discloses confidential or highly personal information of the type that sometimes is shielded from public view by a protective order.

7.   The underlying proceeding has concluded, and therefore there can be no jeopardy or risk to any party's fair trial rights.

8.   Any attempted gag on the dissemination of the video of Ally Financial's deposition is futile, given that it has been posted online.

Defendants-Appellees, after the termination of the principal litigation, resorted to the incorrect procedure, the filing of a motion for a protective order, to dispute Springs' uploading, onto a public website, the videotaped deposition of Ms. Bouque.   In the absence of initiating a new lawsuit, Defendants-Appellees's sole remedy was to seek a recall of the mandate of the Court of Appeals, which, under certain circumstances, the Court exercises its discretion to allow.  The Court of Appeals was the only tribunal in which to invoke jurisdiction. Defendants-Appellees, assuming a recall of the mandate, should thus have sought a directive from the Court how the District Court should proceed in disposing Defendants-

12

Appellees's request for relief.  Otherwise, Defendants-Appellees could have filed a new action.

There is no other basis under Article III of the Constitution for invoking the Article III jurisdiction of the District Court. With the litigation terminated, the District Court lacked power to render relief. The District Court's reliance upon Federal Rules of Civil Procedure, Rule 26, to exercise jurisdiction was misplaced. Protective orders under Rule 26 may only be issued in the context of an actual discovery proceeding, not present here, in view of the lack of any proceeding before the District Court. That the present case did not involve a "discovery proceeding" is clear from the fact that there was no litigation pending when Defendants sought a protective order, and, further, the discovery materials in question had already been placed in the public domain.

It is also clear that the District Court's referral of the motion for a protective order to the Magistrate Judge was unauthorized. The referral was based upon the mistaken assumption that the motion constituted a "discovery proceeding," which it clearly was not but instead, a dispositive motion, which, without the consent of the parties, could not be decided by the Magistrate.  The District Court applied the incorrect standard of review, "clearly erroneous," in upholding, contending that the referral to the Magistrate constituted a "non-dispositive" proceeding arising in a discovery dispute. However, there was no pending discovery dispute, as all

litigation between the parties had been concluded. In truth, the motion for a protective order involved a "dispositive proceeding," which was therefore governed by full, de novo review.

The District Court's reliance upon *Cooter & Gell*, 496 U.S. 384 (1990) and related cases was also misplaced. This line of authority was decided in the context of enforcing the mandate of Federal Rule of Civil Procedure 11, addressed to the statutory power provided to the District Court to monitor and discipline attorney misconduct. This particular power under Rule 11, Congress determined, is necessary to prevent a serious potential abuse, namely, the practice of counsel filing a frivolous complaint and then filing a notice of dismissal, after the opponent has expended time and expense in framing a response to the attorney's pleading. In short, the judicial power to intervene in order to rectify attorney misconduct in the courts is not in point in the present case.

The application of *Seattle Times Co. v. Rheinhart*, 467 U.S. 20 (1984), to resolve the present dispute, constituted error. In that case, a protective order was issued in advance of the production of discovery materials prior to trial, whereas in the case at bar, the disputed discovery materials were posted in the public domain after the termination of the litigation, when nothing was pending.

Another reason for distinguishing Seattle Times is the substantial First Amendment concerns of the religious entity Rheinhart in that the compelled

production of its members and other related information could well constitute a "chilling" effect on member activities. *See NAACP v. Button*, 371 U.S. 415 (1963).

Upholding the District Court order would result in an unmistakable prior restraint in violation of the First Amendment to the Constitution. The courts are unanimous that there always exists a presumption in favor of public disclosure, especially, where, as here, such disclosure will serve to inform the public about the workings of the judicial system. Absent some countervailing interest, disclosure must not be enjoined.

Indeed, the fact of public disclosure by the uploading of the video renders the present dispute moot: a) The video had been in the public domain for over eight months before Defendants-Appellees took any action to remove it; and b) the courts are clear that once there is public disclosure, that is disclosure to third parties, the matter is moot.

## ARGUMENT

### I. Standard of Review

The appellate court reviews questions of law, including a lower court's determination of its subject-matter jurisdiction, de novo. *Trans Energy, Inc. v. EQT*

15

*Prod. Co*., 743 F.3d 895, 900 (4th Cir. 2014);  *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005).

## II.    The Defendants Motion Should Be Dismissed For Lack of Jurisdiction.

There are multiple jurisdictional reasons why the district court's decision should be reversed, including lack of a case or controversy, mootness, the requirement of a pending action to invoke Federal Rule of Civil Procedure 26, and the improper assertion of magistrate jurisdiction.  Each reason shall be discussed in turn.

### A. As There was no Case or Controversy Remaining in this Case, the District Court Lacked Subject Matter Jurisdiction To Decide the Defendant's Motion

Defendants' motion for a protective order against continued publication of the deposition conducted pursuant to F.R.C.P., Rule 30(b)(6) did not constitute the required "case or controversy" to permit an Article III court to assume jurisdiction. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. Eastern Kentucky Welfare Rights Organization*, 96 S.Ct. 1917, 426 U.S. 26, 37 (1976) quoting *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950 (1968).  Objections to a tribunal's jurisdiction  can be raised at

16

any time, even by a party that once conceded the tribunal's subject matter jurisdiction over the controversy. *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824, 184 L. Ed. 2d 627, 81 USLW 4053 (2013).

Article III of the Constitution limits the judicial power of the federal courts to particular "cases" or "controversies." U.S. Const. Art. III. The court found that a court's inherent and broad discovery powers permit it to exercise ancillary jurisdiction in a closed case. *Kokkonen* and *Alexandria* make it clear that ancillary jurisdiction is not a way to avoid the case or controversy requirement and open the floodgates of jurisdiction. *Kokkonen v. Guardian Life Insurance Company of America*, 114 S. Ct. 1673, 511 U.S. 375 (1994); *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 218 F.3d 307, 310 (4th Cir. 2000). The purpose of ancillary jurisdiction is to effectuate decrees, vindicate the court's authority and manage proceedings. None of the situations exist in the present case. The court did not have any decrees that survived final judgment. There being no discovery orders outstanding, I did not disobey any order of the court such that the court needed to vindicate its authority. The court did not retain jurisdiction over any matters and there are not proceedings going on in this closed case to manage. *Kokkonen* does not support the Defendants' argument.

In *Kokkonen*, the plaintiff and defendant life insurance company entered

17

into a settlement agreement and entered into a Stipulation and Order of

Dismissal  With Prejudice.  *Id*. The Stipulation and Order did not reserve

jurisdiction in the district court to enforce the settlement agreement; indeed, it

did not so much as refer to the settlement agreement.  *Id*. The parties disagreed

on return of certain confidential files and the life insurance company made a

motion in the closed case to enforce the settlement agreement.  *Id*. Kokkonen

opposed the motion claiming the district court lacked subject matter jurisdiction.

The district court entered an enforcement order citing its "inherent power to do

so."  [same argument propounded by the Defendants here].  *Id.*  The Ninth

Circuit affirmed holding that after dismissal of an action pursuant to a settlement

agreement, a "'district court has jurisdiction to decide the [enforcement] motion[]

under its inherent supervisory power.  *Id.* The United States Supreme Court

granted cert and reversed.  The respondent life insurance company relied upon

the doctrine of ancillary jurisdiction.  The Supreme Court held that ancillary

jurisdiction has never been based on "a relationship so tenuous as the breach of

an agreement that produced the dismissal of an earlier federal suit."  *Id*.  The

Court then went on to list examples of when ancillary jurisdiction has been

appropriate. *Id.  citing  Chambers v. NASCO, Inc*., 501 U.S. 32 (1991) (power to

compel payment of opposing party's attorney's fees as sanction for misconduct);

*United States v. Hudson*, 7 Cranch 32, 34 (1812) (contempt power to maintain

order during proceedings).

In *Alexandria*, ARC made the same argument regarding ancillary jurisdiction to the Fourth Circuit to no avail. *Alexandria Resident Council, Inc.*, 218 F.3d 307, 310 (4th Cir. 2000). The Fourth Circuit held that the district court's order, pursuant to ARC's motion forcing ARHA accept ARC's purchase offer, was not necessary to the effectuation of the court's prior judgment that ARC be recognized as the local resident council of the Madden Homes and thus the district court lacked jurisdiction under Article III. *Id* at 310; *See also Indiana Lumbermens Mut. Ins. Co. v. Information Systems, Inc*., 83 F.3d 415 (4th Cir. 1996) (Court did not retain jurisdiction over settlement agreement so no jurisdiction in closed case).

In finding no ancillary jurisdiction for an attorney fee claim, the *Bruton* court noted that the United States Supreme Court emphasized that the ancillary doctrine's limits are quite narrow. "[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Bruton v. Carnival Corp*., 916 F.Supp.2d 1262 (S.D. FL. 2012) quoting *Kokkonen,* 114 S. Ct. 1673, 511 U.S. 375 (1994).

The District Court, ignoring the absence of any pending litigation before it, cited *Cooter&  Gell v. Hartmarx Corporation*, 496 U.S. 384 (1990) for the

19

proposition that the District Court is not deprived of jurisdiction, post-judgment.

This line of cases has no application to the facts at bar. The holding in that case

was specifically stated to be "A voluntary Rule 41(a)(1)(i) dismissal does not

deprive a district court of jurisdiction over a Rule 11 motion."  Id.  Cooter and the

related cases deal with the District Court's power, specifically created by Congress

with the passage of Federal Rule of Civil Procedure 11, to regulate and control the

conduct of attorneys, who file frivolous lawsuits, followed by a quick notice of

dismissal before the opponent can join issue; meantime, opposing counsel has

spent time and expense, which will go unpunished, but for the authority under Rule

11 above.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1967), is also distinguishable

from the present case. The significant difference between the two fact patterns is

that the Seattle Times case involved a protective order, granted in advance of

production of discovery materials, pre-trial—when litigation was pending.

**B. Appellee's sole procedural remedy within the context of this case for contesting the uploading of the video taped deposition of Ally Financial was to apply to this Court for the recall of the mandate.**

With the litigation between the parties concluded, including the appeal to

this Court, which had issued the mandate, the District Court lacked any basis to

take up the motion for a protective order. Defendants' remedy, if any, was to seek

20

the recall of this Court's mandate, which, under certain circumstances, federal appellate courts have exercised discretion to allow.  *See Greater Boston Television Network v. Federal Communications Commission*, 463 F.2d 288 (D.C. Cir. 1971), cert. denied, 406 U.S. 950 (1972) (Applying 28 U.S. 2106); *Moran v. Clarke*, 309 F.3d 516 (8th Cir. 2002); *American Iron & Steel Institute v. E.P.A.* 560 F.2d 589 (3rd. Cir. 1977); *Reserve Mining Co. v. Lord*, 529 F.2d 181, 184 (8th Cir. 1976). The Court of Appeals was thus the only Court to properly exercise jurisdiction here.  *Co. Doe v. Pub. Citizen* 749 F.3d 246 (4th Cir 2014).  Upon the recall of the mandate, Defendants could have sought directions from this Court how to instruct the District Court to conduct further proceedings.

## C. The District Judge Should Have Performed a De Novo Review of the Magistrate's Order.

The District Court improperly referred the Defendants' motion to the Magistrate Judge as a pretrial,  "non-dispositive" motion pursuant to title 28 U.S.C. 636(b)(1)(A).  That statute along with section B provides;

> (1) Notwithstanding any provision of law to the contrary—
> (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter

21

> under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.
>
> (B) a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial [1] relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

28 U.S.C 636 (b) (1) (A) and (B).

The District Court reasoned that the motion was part of a discovery dispute under Federal Rule of Civil Procedure 26. Yet, there was no discovery proceeding at all, as the entire litigation had ended. Thereafter, the District Court applied the "clearly erroneous" standard of review in upholding the Magistrate's decision, when, in truth, the proceeding before the Magistrate was "dispositive," requiring the consent of the parties for resolution, which was not obtained. Accordingly, the Magistrate decision was, at best, merely a recommendation, subject to de novo, not clearly erroneous review. The District Court's ruling must be set aside for this reason alone.

The lower court never provided any case support for why the order in this case should be considered a discovery order. The protective order in this case has nothing to do with permitting or providing discovery. *See e.g. Rafferty, In re*, 864 F.2d 151, 154 (D.C. Cir. 1988) (The order in question is not a discovery order. . . . we do not question the power of the district court to regulate discovery or the manner in which materials may be used in a litigation pending before it" however,

the magistrate judge exceeded its authority in the case by regulating matter outside of litigation.); *San Juan Dupont Plaza Hotel Fire Litigation, In re*, 859 F.2d 1007 (1st Cir 1988) (Traditionally, discovery orders resolve conflicts arising when a party, through the use of one of the enumerated discovery devices, seeks to gain information from an adverse party or a third person").

Even if the district court could exercise jurisdiction over this matter based on its inherent power to control discovery, the magistrate judge has no such inherent powers and could not decide this matter under 28 USC 636 (b) (1) without consent. In *Reddick v White*, the Fourth Circuit addressed a sanctions order issued by a magistrate judge after the conclusion of the underlying litigation. *Reddick v. White*, 456 F. App'x 191, 193 (4th Cir. 2011) (per curiam). In Reddick, the Fourth Circuit provided the method to determine whether or not a motion was dispositive. Id. The Reddick Court held that "A motion for sanctions under the district court's 'inherent' power is not a pretrial matter under 636(b)(1)(A). Magistrate judges have no inherent Article III powers—they have only those powers vested in them by Congress. . . . the motion for sanctions in this case — requested under the district court's "inherent" power and issued after the conclusion of the underlying case — was not a nondispositive pretrial matter under §636(B)(1)(a), and the magistrate was permitted only to enter a Report and Recommendation subject to the district court's de novo review. The district court's failure to apply the proper de

23

novo standard of review is reversible error. . . . .  The magistrate judge's ruling was thus "dispositive of a claim," that is, a claim for sanctions against White." *Id*. citing *ALCOA v. EPA*, 663 F.2d 499, 502 (4th Cir. 1981).

In ALCOA, the magistrate issued findings on a motion to quash a warrant by the EPA to view the facilities of a company and the Fourth Circuit found the motion to be dispositive because there was nothing left to be decided in the case. *ALCOA*, 663 F.2d at 502 (4th Cir. 1981).  "There is nothing in the record to inform this court of the authority relied on by the district court in referring the motion to the magistrate.  Clearly the parties did not consent to the magistrate's jurisdiction under 28 U.S.C. § 636(c)(1). . . .  The judge could not have referred Alcoa's motion, therefore, under § 636(b)(1) (A).  The motion was not a "pretrial matter" but set forth all of the relief requested.  The magistrate certainly treated it as dispositive. *Aluminum Co. of America, Badin Works, Badin, N.C. v.  EPA*., 663 F.2d 499, 502 (4th Cir. 1981).  These cases make it clear that the magistrate judge in this case decided a dispositive motion that by law has to be referred to the district judge for a final order.

## D. A Motion For a Rule 26 Protective Order Must be Brought in the Court Where the Action Is Pending; Thus Defendants' Motion Was Untimely.

The Federal Rules of Civil Procedure provide:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.

F.R. Civ. P. 26(c).

At the time of Defendants' Motion for Protective Order, no discovery was being sought from defendants, nor was there any case pending. It was closed in 2012. The court has misinterpreted the timeliness factor of Rule 26, as the very case cited makes plain. Though *Brittain v. Stroh Brewery Co*. notes the absence of a specific timeframe for a motion for protective order, it makes one timing statement with abundant clarity: "A motion for a protective order is timely if made prior to the date set for producing the discovery." *Brittain v. Stroh Brewery Co*., 136 F.R.D. 408, 413 (M.D.N.C. 1991). The Defendants claim they could not have anticipated a YouTube filing of the videodeposition. Yet, Defendant Ally, Defendant's original lawyers, Jackson Lewis, and Defendant's current lawywers were all regularly posting videos on their channels on YouTube in 2011.[1] Federal Rule of Civil Procedure 26 was not applicable to justify that the proceeding below involved a "discovery proceeding," which the Court below claimed authorized the District Court to invoke the "good cause" language in Rule 26, as a basis for

---

[1] https://www.youtube.com/user/SmithAndersonLaw;
https://www.youtube.com/channel/UCgHo7tn_nS2eVjCa-KF9lwQ;
https://www.youtube.com/user/ally

issuing the protective order. We know of no decision that utilizes Rule 26 to base the issuance of a protective order when no litigation is pending.

### E. The relief demanded by the Defendants Ally and Bouque in their motion for a protective order was rendered moot by Public Dissemination.

The issuance of the protective order must be set aside for another reason: Mootness.   Mootness resulted from the circumstance that the protective order sought to prevent -- publication of materials already in the public domain.  This renders the matter moot.  *See DeFunis v. Odegaard* 8212 235, 416 U.S. 312, 317-20 (1974).  Three of the video depositions were publicly filed.  One was widely shared, distributed and also posted on the internet.  There is no harm for which the court can provide protection to the Defendant.  *See Protectmarriage.com-Yes On 8, Renewal v. City of Montgomery*, 752 F.3d 827, 834  (9th Cir., 2014);  *J.W. v. Knight*, 452 F. App'x 411 (4th Cir. 2011).  "At all stages of the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant [that is] likely to be redressed by a favorable judicial decision."  *Ross v. Reed*, 719 F.2d 689, 693-94 (4th Cir. 1983).  "[T]he judicial branch loses its power to render a decision on the merits of [a] claim," *Nome Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 815 (9th Cir.1995), when a federal court can no longer effectively remedy a "present controversy" between the parties, *Doe No. 1 v. Reed*,

697 F.3d 1235, 1238 (9th Cir.2012); (quoting *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir.2008)). "We are unable to effectively remedy a present controversy between the parties where a plaintiff seeks to enjoin an activity that has already occurred, and we cannot "undo" that action's allegedly harmful effects. *Foster v. Carson*, 347 F.3d 742, 746 (9th Cir.2003); *see also Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir.2001). "Once a fact is widely available to the public, a court cannot grant 'effective relief' to a person seeking to keep that fact a secret." *Doe*, 697 F.3d at 1240; *see also Islamic Shura Council of S. Cal. v. FBI*, 635 F.3d 1160, 1164 (9th Cir.2011); *In re Copley Press, Inc*., 518 F.3d 1022, 1025 (9th Cir.2008) ("Once information is published, it cannot be made secret again."). "A case seeking to keep a document secret is moot once third parties have control over copies of the document." *Doe*, 697 F.3d at 1239. A case is similarly moot where a plaintiff seeks to enjoin specific parties from disclosing information that has already been published across the Internet. *Doe*, 697 F.3d at 1240.

Once the disclosure of the videos occurred, the courts*, according to the cases, may not undo the dissemination to the public. *Project Marriage.com,* 752 F.3d at 834 (9th Cir. 2014). As the foregoing makes clear, the district court lost any and all jurisdiction to issue a protective order, once the disclosure was

complete. It would otherwise be the same as "putting the toothpaste back in the tube."

### III. The Court's Order Constitutes an Prior Restraint Prohibited By the First Amendment.

The protective order issued by the District Court clearly violated the First Amendment rule against prior restraints. There can be no doubt that requiring Plaintiff to take down the video, removing it from public access, constitutes a prior restraint, condemned by the courts. There have been countless instances in which the Supreme Court and federal appellate courts have rejected the plea for an injunction or a protective order, noting that such judicial action violates the First Amendment. *See Smith v. Daily Mail Publishing Co.,* 443 U.S. 97 (1979); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419 (1971).  As these and other authorities make clear, absent a compelling or countervailing interest, publication and access is always favored.  *Co. Doe v. Pub. Citizen,* 749 F.3d 246, 259 (4th. Cir. 2014); *United States v. Appelbaum,* 707 F.3d 283, 293 (4th Cir. 2013); *Under Seal v. Under Seal,* 326 F.3d 479, 483 (4th Cir. 2003). Further, a compelling interest is not established merely because there is a violation of one's right to privacy.  *Organization for a better Austin v. Keefe,* 402 U.S. 415, 419 (1971).

28

The video deposition is also a matter of public concern. "[S]peech on public issues occupies the "highest rung of the hierarchy of First Amendment values" and is entitled to special protection." *Connick v. Myers*, 461 U. S. 138, 145 (1983). This video is a corporate deposition of Ally Financial with Amy Bouque as the designated witness. She is speaking for the corporation. Plaintiff did not post Ms. Bouque's nor anyone else's individual video deposition. At the time it was posted, the defendant Ally Financial Corporation was owned in part or in whole by the U.S. Treasury Department, essentially the American payer. Ally Financial's mortgage subsidiary filed bankruptcy while government owned and negotiated minimal payouts to victims of illegal foreclosures. On December 20, 2013, the Department of Justice announced the federal government's largest auto loan discrimination settlement in history to resolve allegations that Detroit-based Ally Financial Inc. and Ally Bank had engaged in an ongoing nationwide pattern or practice of discrimination against African-American, Hispanic and Asian/Pacific Islander borrowers in their auto lending[2]. It was this announcement that precipitated the posting of the video deposition which was to be part of Plaintiff's petition against Defendant Ally. Plaintiff's public petition alerted the public to the activities of Defendant Ally, through internet news articles and the announcement by the Department of Justice and called for action by the Treasury department to

---

[2] 1 http://www.justice.gov/opa/pr/justice-department-and-consumer-financial-protection- bureau-reach-98-million-settlement

29

make it responsible for its acts.  Anyone opening the petition would see one of the videos.  The deposition excerpts were directly related to the Defendants' policies and procedures towards customers and claims of discrimination.  Plaintiff's written commentary was directly about the public funding and the wrongful activities of Defendant Ally as recently published by the government and other news sources. *Snyder v. Phelps*, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011).

The United States Supreme Court has said that speech is of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," , or when it "is a subject of general interest and of value and concern to the public," *Id* citing *San Diego v. Roe*, 543 U. S. 77, 83-84 (2004).  *Snyder*, 131 S. Ct. 1207, 1211.  In Snyder, the Supreme Court finished by saying

> Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and—as it did here— inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course—to protect even hurtful speech on public issues to ensure that we do not stifle public debate. That choice requires that we shield West-boro from tort liability for its picketing in this case.

*Id*. at p.1220.  How much more so should Springs's speech be protected when it only caused a corporate representative annoyance and embarrassment as opposed to the extreme emotional distress that the

30

families of the dead soldier experience in Snyder which speech was also

protected.

## IV.   Good Cause to Issue a Protective Order Did Not Exist And There is No Compelling Government Interest.

Beyond this, the District Court failed to articulate a required articulated basis

for the issuance of the protective order. Even assuming that the Court possessed

the discretion to order such relief, it could not do so without putting its specific

reasons on the record, which it did not, other than saying it was annoying and

embarrasing. *See Bridge C.A.T. Scan Associates v. Technicare Corp.*, 710 F.2d 940

(2nd. Cir. 1983); *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005);  *See also*

*Charter Practices Int'l. v. Robb*, 2015 U.S. Dist. LEXIS 34112 (D. Conn. 2015)

(the "good cause" requirement for a protective order under Rule 26 requires more

than mere "embarrassment" or "negative publicity." )  There must be a specific

showing of actual financial, competitive, or other substantial harm. The court

below, other than expressing its annoyance that the Plaintiff went outside the

judicial process to publish the 30(b)(6) deposition, never articulated a sufficient

basis to enjoin publication.

The district court has misapplied the holdings of *Seattle Times Co. v.*

*Rhinehart*, 467 U.S. 20, 22 (1984).  The Supreme Court itself states that the Seattle

Times case "presents the issue whether parties to civil litigation have a First

31

Amendment right to disseminate, **in advance of trial**, information gained through the pretrial discovery process." *Id.* (emphasis supplied). In that case -- a libel suit arising from newspaper articles about the Aquarian Foundation, an organization whose beliefs involved séances, magical "stones" that had been "expelled" from Rhinehart's body and the use of a medium (Rhinehart) -- the Seattle Times sought discovery on the financial affairs of the Foundation. Rhinehart moved for a protective order prior to producing that information and, in support of the need for protection, filed affidavits. The affidavits detailed a series of letters and telephone calls defaming the Foundation, its members, and Rhinehart—including several that threatened physical harm to those associated with the Foundation. The affiants also described incidents at the Foundation's headquarters involving attacks, threats, and assaults directed at Foundation members by anonymous individuals and groups. In general, the affidavits averred that public release of the donor lists would adversely affect Foundation membership and income and would subject its members to additional harassment and reprisals. *Id.* at 26-27. The trial court granted the protective order, reasoning "that the restriction was necessary to avoid the 'chilling effect' that dissemination would have on 'a party's willingness to bring his case to court.' Record 63." *Id.* at 27. The Defendants have articulated no similar, dire circumstances that justify restriction of the materials at issue.

32

**V.    The Protective Order Goes Beyond the Motion,  Reaches Materials
Publicly Filed With the Court, and Imposes an  Unconstitutional
Prior Restraint.**

It is undisputed that while Plaintiff only filed the 30(b)(6) deposition

transcript with the district court, the Plaintiff did in fact publicly file a copy

of the actual video for every other video deposition along with a copy of the

written transcript on November 11, 2011.  The only reason the 30(b)(6)

deposition video was not filed is that she had not yet received it.  This filing

was in fact prompted by Defendants challenge to the authenticity of

Plaintiff's transcripts in its summary judgment argument.  In ruling on

Defendants' Motion for Summary Judgment, the Court found that the

Magistrate Judge had "expressly provided for post-deadline discovery" and

therefore accepted Plaintiff's supplemental filing and determined "the Court

will consider Plaintiff's new evidence." [Dkt. 82]  The more rigorous First

Amendment standard applies to attachments to dispositive motions.  *See

Rushford v. The New Yorker Magazine, In*c., 846 F.2d 249, 253 (4th

Cir.1988) ("Once the documents are made part of a dispositive motion, such

as a summary judgment motion, they lose their status of being raw fruits of

discovery. . . . We believe that the more rigorous First Amendment standard

should also apply to documents filed in connection with a summary

33

judgment motion in a civil case." (internal quotation marks and citations omitted)).

While the magistrate's order contains extensive discussion of the distinction between materials that have been filed with the court and materials that have not been filed with the court, , ruling sweeps broadly and provides "No party shall publish or disseminate audio or video recordings obtained during discovery in this action without prior permission of the Court." The Order states that "any video or audio recordings related to this action … may only be used in connection with this lawsuit, unless otherwise ordered by this Court." [JA. 72-73]   The district court found the magistrate's order " entirely consistent with the First Amendment" solely based on a quote in Seattle Times regarding pretrial discovery. . . . . (JA 101 quoting *Seattle Times*, 467 U.S. at 32 (citations omitted).

Unlike the Seattle Times case, this case is not a matter of pretrial discovery.  The videos have become judicial documents filed in connection with a summary judgment motion.   The more rigorous First Amendment standard applies to attachments to dispositive motions.  *See Rushford v. The New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988) ("Once the documents are made part of a dispositive motion, such as a summary judgment motion, they lose their status of being raw fruits of  discovery. . . .

We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case." (internal quotation marks and citations omitted)).  to serve that interest." *Id.*   The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position. *See Press-Enterprise Co. v. Superior Court*, 478 U.S.1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion"). This Court reviews a district court's decision concerning access under the First Amendment de novo.  *Virginia Dept. of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004); *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 178 (4th Cir. 1988); *Stone v. University of Md. Med. Sys. Corp.*, 948 F.2d 128, 131 (4th Cir.1991).

Parties to litigation have no fewer First Amendment rights than non-parties, and there is no question that if Ms. Springs were a reporter with the Charlotte Observer, seeking to use materials that from the public file, any prohibition on publication or dissemination would constitute an unconstitutional prior restraint. *See Co. Doe v. Public Citizen*, 749 F.3d 246, 263 (4th Cir., 2014) ("Company Doe attempts to distinguish the above cases on the ground that they involved media parties that had a First Amendment

right to inform public discourse. We see no reason why the standing of news media to seek appellate review of a district court's sealing order should differ from that of a member of the general public."); *Rafferty, In re*, 864 F.2d 151, 155 (D.C Cir. 1988) ("It would certainly be anomalous if a litigant in Mr. Rafferty's shoes who wished to distribute information to the government or to the media could not appeal an order forbidding him from doing so, while the newspaper to whom he wished to give his story were able to appeal.").

Prior restraints "are the most serious and the least tolerable infringement on First Amendment rights" and are "presumptively invalid." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976).  Any party seeking to obtain a prior restraint carries a particularly heavy burden of justifying the imposition of such a restraint. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (internal quotations and citation omitted). See also *New York Times Co. v. United States*, 403 U.S. 713 (1971) (per curiam) (rejecting national security justification for a prior restraint in the Pentagon Papers case); *In re Charlotte Observer*, 921 F.2d 47 (4th Cir. 1990).

In order to sustain a prior restraint on speech, the party seeking restraint must demonstrate three things:  (1) there is a danger that is serious

36

and imminent; (2) stopping the speech will stop the danger; and (3) the remedy is no broader than necessary. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *New York Times Co. v. U.S.*, 403 U.S. 713 (1971); *Near v. State of Minnesota*, 283 U.S. 697 (1931). Though the Supreme Court has never upheld a prior restraint, the Court has reflected that only such communications as "publication of the sailing dates of transports or the number and location of troops" could justify a prior restraint. *Near*, at 716.

To the degree that the Order prohibits publication of judicial records filed in connection with a dispositive motion, that is a prior restraint that is unjustified.

## <u>CONCLUSION</u>

For the foregoing reasons, Springs respectfully requests that the Court reverse the district court's order and dismiss the Defendants motion for a protective order.

## <u>REQUEST FOR ORAL ARGUMENT</u>

The Plaintiff respectfully requests the Court hear oral argument.

Respectfully submitted this the 26th of May, 2015.

By:  <u>/s/ Herman Kaufman</u>
Herman Kaufman
Attorney for Plaintiff-Appellant
P.O. Box 352
Old Greenwich, CT 06870
(203) 964-1115
Hkaufma2@gmail.com

### <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

- This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or Fed. R. App. P. 32(a)(7)(B) because Appellant's Opening Brief contains <u>8,547</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

- This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14-point type.

- In making this certification, I have relied on the word count feature of the word-processing program used to prepare the brief.

Dated: May 26, 2015                     /s/ Herman Kaufman
                                        Herman Kaufman
                                        Attorney for Plaintiff-Appellant
                                        P.O. Box 352
                                        Old Greenwich, CT 06870
                                        (203) 964-1115
                                        Hkaufma2@gmail.com

39

# CERTIFICATE OF SERVICE

I certify that on May 26, 2015 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

N/A

/s/ Herman Kaufman
Herman Kaufman
Attorney for Plaintiff-Appellant
P.O. Box 352
Old Greenwich, CT 06870
(203) 964-1115
Hkaufma2@gmail.com